**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| MARIA ROSIBEL NOLASCO | |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| HUONG BINH FOODS, INC.<br>d/b/a Huong Binh Bakery & Deli | Case No.: |
| a Virginia corporation, | |
| Serve: Quang H. Le, Registered Agent<br>5604 Bouffant Blvd.<br>Alexandria, VA 22311 | |
| and QUANG HUU LE | |
| Defendants. | |

## COMPLAINT

### Preliminary Statement

1. For over nine years, Plaintiff Maria Rosibel Nolasco worked sixty hours per week in the kitchen of Huong Binh Bakery & Deli. For all her hard work, she was always paid significantly less than the federal minimum wage and never received an overtime premium.

2. Plaintiff now brings suit against her former employers: Huong Binh Foods, Inc., doing business as Huong Binh Bakery & Deli ("Huong Binh"), and its officer and director Quang Huu Le.

3. Plaintiff's claims arise from Defendants' failure to pay minimum and overtime wages as required by the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA").

1

4. The Court has subject-matter jurisdiction over the FLSA claims pursuant to 29 U.S.C. § 216(b) (private right of action) and 28 U.S.C. § 1331 (federal question).

5. The Court has personal jurisdiction over Defendant Huong Binh because the company's principal place of business and registered address are both located in Virginia, and because the events or omissions giving rise to Plaintiff's claims occurred there.

6. The Court has personal jurisdiction over Defendant Le because (1) he is the manager of Huong Binh and was present at Huong Binh almost every day for approximately the last two years; and (2) as Plaintiff's employer, his acts and omissions in Virginia gave rise to the wage violations that form the basis of this complaint.

7. Venue is proper in the Eastern District of Virginia because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred there. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

8. Defendant Huong Binh Foods, Inc. is a Virginia corporation doing business under the name "Huong Binh Bakery & Deli." It operates as a bakery and deli that sells Vietnamese food and other goods. It also caters weddings, embassy functions, and other events in the greater Washington, D.C. area.

9. Huong Binh's physical address is 6781 Wilson Blvd., Falls Church, Virginia 22044, within the "Eden Center" Vietnamese shopping plaza. Its registered address is 5604 Bouffant Blvd., Alexandria, Virginia 22311, a residence in Fairfax County owned by Defendant Quang Le.

10. On information and belief, the gross annual business volume of Huong Binh exceeded $500,000 at all relevant times.

11. Defendant Quang Huu Le is an officer and a director of Huong Binh. On information and belief, he is a resident of Maryland.

2

12.  On information and belief, at all relevant times, Defendants had at least two employees who were engaged in interstate commerce, or who handled, sold, or otherwise worked on goods or materials that moved in interstate commerce.

13.  Plaintiff Maria Rosibel Nolasco is an adult resident of Fairfax County, Virginia. She goes by "Rosa," a nickname derived from her middle name.

## FACTS

### Plaintiff's Work Generally

14.  Plaintiff Nolasco worked in the kitchen at Huong Binh from about April 22, 2008 until October 29, 2017. Her principle duties were making dumplings and spring rolls and preparing meals catered by Huong Binh.

15.  Ms. Nolasco learned about the job at Huong Binh from her sister, who was already working there.

16.  At the time Ms. Nolasco was hired in April 2008, Huong Binh was managed by Defendant Quang Le's late sister, Tuyen Le. Tuyen Le was the person who hired Ms. Nolasco.

17.  When Ms. Nolasco first started her job at Huong Binh, Ms. Nolasco's sister showed her how to make dumplings and spring rolls and perform her other food preparation tasks. Ms. Nolasco quickly reached a high level of proficiency and within a short time could perform her daily tasks essentially without direct supervision.

18.  Ms. Nolasco began a typical workday by cooking noodles. Then she put catered meals into containers for delivery to a local retirement home. In the afternoon, she made dumplings and spring rolls. Ms. Nolasco estimates that she prepared around 600 dumplings on average each day. Huong Binh provided all tools and supplies that she needed to perform her daily tasks.

19. Approximately seven or eight employees worked in the kitchen at a given time. An additional four employees worked at the front of the store, taking customer orders and running the cash registers.

20. Around December 2015, Tuyen Le relinquished her position as Huong Binh's manager due to health reasons, and Defendant Quang Le replaced Tuyen Le as manager. Tuyen Le passed away in April 2017.

21. After taking over as manager, Defendant Quang Le oversaw Huong Binh's day-to-day operations. He became the person who determined Ms. Nolasco's work schedule and compensation, kept track of the hours she worked, and calculated and paid her wages.

22. Mr. Le was also in charge of hiring and firing employees.

23. On most days, Mr. Le arrived at Huong Binh around 2 or 3 p.m. and would still be working at the store when Ms. Nolasco left at 5 p.m. On Wednesdays, he would often arrive earlier, around 11 a.m. On Sundays, he typically came in for only a short period of time.

24. Mr. Le maintained an administrative office located in the store. He spent much of his time inside his office. He would leave his office to relay new catering orders to employees, distribute payments, and handle other work-related matters.

25. Mr. Le's elderly father was also present at Huong Binh on most days. The father helped with delivery orders coming into the store and other work-related matters. He also spent time just relaxing and reading in the store.

26. Ms. Nolasco worked at Huong Binh six days a week for at least ten hours each day, from 7 a.m. to 5 p.m. She would sometimes arrive at the store early and start working 10 to 20 minutes before 7 a.m.

27. Defendants did not give Ms. Nolasco any regular breaks. She would typically take 5-10 minutes to eat lunch in the kitchen but did not take any other breaks during the workday. Her schedule did not vary during the approximately nine and a half years she worked at Huong Binh.

28. Ms. Nolasco held no other employment during the time she was employed at Huong Binh. She never employed or supervised anyone at Huong Binh.

### Pay Practices and Pay Problems

29. Defendants paid Ms. Nolasco a flat rate twice per month: once on or around the 2nd of the month and once on or around the 17th of the month. Ms. Nolasco's pay stubs indicate that Defendants conceived of each month as having two pay periods: one covering the 1st through the 15th of the month and the second covering the 16th through the end of the month. Since the number of days in a given month varies, the second pay period of the month would cover between 13 and 16 days. Despite this variation, Ms. Nolasco's twice-monthly rate always remained the same.

30. Ms. Nolasco's starting wage rate in 2008 was $650 per pay period. After that, her twice-monthly wage rate increased by approximately $10 to $15 each year. By 2014, she was getting paid approximately $715 twice per month. In 2015, she received approximately $725 twice per month. In 2016, she received approximately $735 twice per month. Finally in 2017, she received a flat rate of $750 twice per month.

31. Both Tuyen Le and Defendant Quang Le paid Ms. Nolasco exclusively in cash.

32. During the period when she was the Huong Binh manager, Tuyen Le did not give Ms. Nolasco any paystubs. After Defendant Quang Le took over as manager in 2015, he gave Ms. Nolasco very informal paystubs each time she was paid. The paystubs stated the dates of the

pay period, the number of days she had worked during that pay period, and the cash wages she was paid. The paystubs did not state the how many hours Ms. Nolasco had worked during the pay period or what her rate of pay was. The paystubs refer to Ms. Nolasco by her nickname "Rosa."

33. Defendants required Ms. Nolasco to use an automated punch-clock machine. Ms. Nolasco would type her employee number into the machine just before starting work to "punch in" and just after stopping work to "punch out." The number of hours recorded by the punch-clock machine, however, never appeared on Ms. Nolasco's paystubs. Defendants never gave Ms. Nolasco any record of the hours she worked.

34. If Ms. Nolasco ever missed a day of work or a portion of a workday, Defendants would reduce Ms. Nolasco's twice-monthly pay rate proportionately. For example, on October 25, 2017, Ms. Nolasco missed part of the workday to attend an appointment. For the pay period covering October 16 through October 31, 2017, the paycheck indicates that Defendants paid Ms. Nolasco a total of $649.04: $634.62 for eleven days of work (10 hours a day, or 110 hours), plus $14.42 for the 2.5 hours she worked on October 25. On its face, Ms. Nolasco's paystub for this period clearly demonstrates that Defendants were in fact paying Ms. Nolasco at an hourly rate of $5.77 per hour—well below the FLSA minimum wage of $7.25 per hour. This paystub also demonstrates that Defendants were paying all of Ms. Nolasco's hours— including her overtime hours—at the same rate, without a time-and-a-half overtime premium.

35. Ms. Nolasco rarely missed full days of work since Defendants required Ms. Nolasco and other employees to work when they were sick.

36. At no time during Ms. Nolasco's employment did Defendants pay her at least the federal hourly minimum wage of $7.25.

37. At no time during Ms. Nolasco's employment did Defendants pay her a time-and-a-half hourly premium for any of the hours that she worked beyond 40 in a given week, despite the fact that Defendants directed her to work 20 hours of overtime every week.

38. On information and belief, Defendants made no effort whatsoever to pay Ms. Nolasco the minimum wage and overtime even though it was patently obvious that Defendants were out of compliance with federal law.

39. On October 29, 2017, Ms. Nolasco left Huong Binh after Defendant Quang Le's father behaved aggressively towards her. Mr. Le's father mistakenly believed that Ms. Nolasco had failed to complete a spring roll order. He yelled at her while he beat his fists on a table that separated him from Ms. Nolasco. Feeling disrespected and scared, Ms. Nolasco left the store and did not return.

## CLAIMS

### Fair Labor Standards Act, 29 U.S.C. §§ 201–219

40. At all times relevant to this action:

    a. Plaintiff Maria Rosibel Nolasco was Defendants' "employee" within the meaning of 29 U.S.C. § 203(e)(1);

    b. Defendants were Ms. Nolasco's "employers" within the meaning of 29 U.S.C. § 203(d);

    c. Defendants "employed" Ms. Nolasco within the meaning of 29 U.S.C. § 203(g); and

    d. Ms. Nolasco was engaged in commerce, or was employed by Defendants in an enterprise engaged in commerce, within the meaning of 29 U.S.C. § 203(b).

## Claim 1:

### Failure to Pay Minimum Wages
### 29 U.S.C. § 206

41. Defendants failed to pay Ms. Nolasco at least $7.25 for each hour that she worked in a given workweek.

42. By failing to pay Ms. Nolasco at least $ 7.25 for each hour she worked, Defendants violated the minimum-wage provision of the Fair Labor Standards Act, 29 U.S.C. § 206.

## Claim 2:

### Failure to Pay Overtime Compensation
### 29 U.S.C. § 207

43. Defendants failed to pay Ms. Nolasco a time-and-a-half overtime premium for all the hours that she worked beyond 40 in a workweek.

44. By failing to pay Ms. Nolasco an hourly time-and-a half overtime premium, Defendants violated the FLSA's overtime provision, 29 U.S.C. § 207.

## REQUESTED RELIEF

Wherefore, Ms. Nolasco respectfully requests that this court provide the following relief:

45. Declare that Defendants' FLSA violations were "willful," such that a three-year statute of limitations applies under 29 U.S.C. § 255(a);

46. Award Ms. Nolasco her actual damages under the FLSA, jointly and severally against all Defendants, in the amount of all unpaid minimum wages, in an amount to be proved at trial;

47. Award Ms. Nolasco her actual damages under the FLSA in the amount of all unpaid overtime compensation, jointly and severally against all Defendants, in an amount to be proved at trial;

48. Award Ms. Nolasco an additional amount as liquidated damages equal to her unpaid minimum wages and overtime, jointly and severally against all Defendants, pursuant to 29 U.S.C. § 216(b);

49. Award Ms. Nolasco her costs and reasonable attorney's fees, as provided by the Fair Labor Standards Act, 29 U.S.C. § 216(b), jointly and severally against all Defendants; and

50. Any other relief the Court deems just and proper.

Plaintiff demands trial by jury.

Respectfully submitted,

/s/ Nicholas Cooper Marritz                    Date: December 8, 2017
Nicholas Cooper Marritz (VA Bar No. 89795)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
T: (703) 778-3450
F: (703) 778-3454
E: nicholas@justice4all.org

*Counsel for Maria Rosibel Nolasco*